A94A0138. SALMON v. PEARSON & ASSOCIATES, INC.
(446 SE2d 762)

BEASLEY, Presiding Judge.

This case comes to us on the grant of defendant's motion for summary judgment. In such a posture, as on consideration of the motion initially, "[t]he party opposing the motion . . . is entitled to all favorable inferences and the benefit of every doubt, and the evidence is construed most strongly in [her] favor. [Cit.]" *Dixieland Truck Brokers v. Intl. Indem. Co.*, 210 Ga. App. 160, 163 (2) (435 SE2d 520) (1993). "[A]t summary judgment a party who will not bear the burden of proof at trial . . . must demonstrate by reference to evidence in the record that there is an absence of evidence to support at least one essential element of the non-moving party's case." *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (4) (405 SE2d 474) (1991).

Plaintiff Salmon purchased a town house from HUD. The lender retained defendant, a professional land survey firm, to prepare a flood certification, which was required for closing and was paid for as a part

---

of closing costs. The certification document was not ready for the closing, so the lender's closing attorney who ordered it called the firm. In consequence of the phone call he told the plaintiff purchaser that the house was not in a flood hazard zone. She testified that on the strength of this information she signed the flood insurance agreement which the lender required and which obligated her to buy flood insurance if the lender and/or investor should require it. The closing attorney signed this document certifying the flood zone status of the property according to the "attached Certification of Pearson & Associates, Inc." The "Insurance Certificate," as defendant terms it, was not in fact attached because it was not yet available, and the attorney's affidavit explains the incomplete information as to flood status by stating that he told the purchaser, after making the phone call, that the property was not in a flood hazard area.

The closing proceeded to finality, and the purchaser was mailed the certification, which is dated two days after the closing. It references her name and the street address of the property and states that it "is not contained within a special flood zone hazard area"; notation is made that "no flood hazard exists (as per recorded subdivision plat) due to piping of creek."

The purchaser moved into the house about ten days after the closing, and four months thereafter the house, her personal property, and her car suffered extensive flood damage. The market value of the property decreased, and Salmon was required to buy flood insurance.

She sued the land survey firm which provided the certification, alleging negligence and attaching the affidavit of an expert pursuant to OCGA § 9-11-9.1. The trial court granted summary judgment to defendant, holding that *Badische Corp. v. Caylor*, 257 Ga. 131 (356 SE2d 198) (1987), controls. Based thereon, the court concluded that it is undisputed that the evidence does not show that defendant knew that Salmon "or anyone else similarly situated" would rely on its representation and act on it.

There is evidence which shows otherwise. Defendant was asked to do this certification for a lender by a closing attorney. Defendant prepared the certification "Pursuant to your request," inferentially meaning either the lender or its attorney. Defendant knew the purchaser's name and, of course, the particular parcel, as it appears on the certification and was the very subject of the defendant's examination and opinion. Defendant was paid from the closing proceeds.

Although the property purchaser was not in privity with the surveyor with respect to the alleged misrepresentation, she need not be. *Southeast Consultants v. O'Pry*, 199 Ga. App. 125 (1) (404 SE2d 299)

(1991).[1] In the first place, she suffered more than mere economic loss; she sustained extensive property damage. See *Robert &c. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680, 681 (300 SE2d 503) (1983). Even if she must show that her reliance was the desired result of the representation, under the rule adopted in *Robert &c. Assoc.* for cases of solely economic loss, it is evident that she has done so. When the *purpose* for which the opinion was given is looked for, there is evidence that it was undertaken and submitted for the sale of the property to plaintiff, that is, for the lender to advance the purchase money and for the borrower to purchase at the agreed price. Thus the test of *Robert &c. Assoc.* is satisfied, at least for the purpose of defendant's motion for summary judgment.

*Badische*, supra at 133, established that in the absence of certain factors such as property damage (of which there *is* evidence in this case), "professional liability for negligence . . . extends to those persons, or the limited class of persons who the professional is *actually aware* will rely upon the information he prepared." (Emphasis supplied; footnote omitted.) As related above, the record contains such evidence. Defendant admits having given plaintiff the opinion that the house was not in a flood zone. Reasonable inferences are that defendant knew that its services were being secured for a specific real property purchase and that the buyer would rely upon its professional opinion.

There is also evidence that the buyer did rely on defendant's opinion, which was memorialized in the written certification dated two days after the closing but referred to in the flood insurance agreement. The fact that she did not see the certification document at that time does not avoid her testimony that she relied on what she understood was defendant's opinion in signing the agreement, which understanding was confirmed by the certification, and that she completed the closing on the agreed terms.

*Hardage v. Lewis*, 199 Ga. App. 632 (405 SE2d 732) (1991), differs because in that case involving only economic loss, plaintiffs' reliance on the survey performed at the instance of the lender was after-the-fact and was not justified. They had not relied on it at closing, and they had not exercised diligence in determining the truth or falsity of the sellers' representations. Here the purchaser's testimony and the closing attorney's affidavit show, and the flood insurance agreement indicates, that she did rely on the defendant's opinion re-

---

[1] Although this case applies a literal "foreseeable" relier test, citing *Robert &c. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680 (300 SE2d 503) (1983), rather than the "actually aware of" relier test which *Badische Corp.* says is the proper one, the opinion's description of the facts gives some indication that the defendant was actually aware that plaintiff would rely on its percolation tests.

garding flood status. Secondly, considering the nature of the information, there is no evidence at this stage of lack of diligence in ascertaining whether the property was in a flood hazard area. That is, her failure to undertake an independent personal investigation of this matter did not preclude her reliance from being justified as a matter of law, for the very purpose of the certification was to provide this information from a commercial expert who had special skill and knowledge and was paid for it. This is not a case of blind reliance on the seller's representations regarding a matter of title, which with proper diligence should have been investigated through title survey, as in *Hardage,* but rather a case of reliance on professional opinion, regarding flooding, which the buyer was not bound as a matter of law to challenge by independent inquiry. Any notice of flood possibilities which arguably arose when the buyer, a lay person, visually inspected the premises, was satisfied by the certification. Whether the buyer was justified in relying on it (not merely on a seller's or sales agent's representation) or was required instead to obtain information such as provided by the federal insurance map, is a jury question.

*Copeland v. Home Savings of America,* 209 Ga. App. 173 (433 SE2d 327) (1993), differs in that *Copeland* relied on the real estate agent's representations about flooding, not on a professional certification.

*Judgment reversed. Pope, C. J., McMurray, P. J., Johnson, Smith, JJ., and Senior Appellate Judge Harold R. Banke concur. Birdsong, P. J., Andrews and Blackburn, JJ., dissent.*

ANDREWS, Judge, dissenting.

I believe this case is controlled by *Hardage v. Lewis,* 199 Ga. App. 632, 633 (405 SE2d 732) (1991), and that Salmon has failed to show any *justifiable* reliance upon the certification provided by Pearson or the oral communication by the closing attorney of the flood hazard status. Therefore, I respectfully dissent.

Here, accepting the premise that the property was, in fact, within the 100-year flood plain, does not resolve the issue of Salmon's responsibilities as a purchaser. She deposed that she had visited the property at least twice and had the opportunity to view all around the premises. She was aware that the town house was located below the grade of Warsaw Road and that across a private drive on the rear of the property was located a creek. This creek was partially contained in a pipe large enough for a person to walk through. The entire property sloped towards the creek. Prior to closing, Salmon made no inquiry of anyone concerning the possibilities of flooding. After the flood at issue here, Salmon obtained a copy of the federal insurance map, upon which she is basing her claim that the property is in a flood hazard area.

This case appears to be on all fours with *Copeland v. Home Savings of America*, 209 Ga. App. 173, 174 (433 SE2d 327) (1993). There, Copeland purchased a home and noticed a creek adjacent to the lot during one of her property inspections before purchase. She also noticed some dankness in the basement. She asked her real estate agent if there had been any problem with flooding and received a negative response. After a flood, she sued the seller, the real estate broker, and the surveying company, alleging concealment of the fact the house was in a flood hazard area.

In affirming the grant of summary judgment to defendants, this court concluded that "[t]he law does not afford relief to one who suffers by not using the ordinary means of information, whether the neglect is due to indifference or credulity. When the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means he will not be heard to say, in impeachment of the contract of sale, that he was deceived by a vendor's representations." (Citations and punctuation omitted.) *Copeland*, supra at 174. Here, the federal insurance map was as available to Salmon before her purchase as it was afterwards. See also *Southeast Toyota Distrib. v. Fellton*, 212 Ga. App. 23, 26 (2) (440 SE2d 708) (1994).

I am authorized to state that Presiding Judge Birdsong and Judge Blackburn join in this dissent.

DECIDED JULY 1, 1994 —
RECONSIDERATION DENIED JULY 15, 1994.

*Wood & Perry, Jere F. Wood*, for appellant.
*Steven H. Ballard*, for appellee.